[No. B067966. Second Dist., Div. Seven. Apr. 27, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
JAIME PRIETO, Defendant and Appellant.

COUNSEL

Horace N. Freedman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Susan D. Martynec and James William Bilderback II, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WOODS (Fred), J.—If a defendant, by force, takes two purses from a purse owner while the other purse owner, four to five feet away, shouts "What are you doing? Stop!," may the defendant be convicted of *two* counts of robbery? Our answer is *yes*. We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts may be stated simply. Our perspective favors the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

On December 31, 1991, at 10 a.m., Lorraine Dingman, a paraplegic, parked her car in the large Pico Rivera indoor swap meet parking lot. Her employer, Carolina Pantoja, also having just arrived for work, helped Ms. Dingman into her wheelchair. Ms. Pantoja gave Ms. Dingman her purse to hold so she could push Ms. Dingman's wheelchair. Ms. Dingman put both purses on her lap. The two women were accompanied by Ms. Pantoja's two young sons, one of whom was carrying a carpet sweeper. As Ms. Pantoja "was wheeling her [Ms. Dingman] in" they stopped because Ms. Pantoja's son "started having trouble with the carpet sweeper."

Appellant approached from Ms. Pantoja's right, bent over Ms. Dingman, and grabbed both purses. Ms. Dingman held on to them. They "struggled back and forth."[1] Ms. Dingman "held on as tight as [she] could." Appellant was "fighting" her." "He kept pulling them from [her]." Ms. Dingman screamed.

Ms. Pantoja, four to five feet away, realized Ms. Dingman "was being robbed" and yelled at appellant: "What are you doing? Stop."

Finally,[2] appellant pulled the purses from Ms. Dingman and began to run away. A station wagon approached and the driver opened the passenger door for appellant. Appellant, pursued by Ms. Pantoja and others, ran toward the station wagon. The driver,[3] apparently seeing the pursuers, drove off without appellant. The driver drove to nearby Paramount Boulevard, stopped, let appellant enter, and drove off. A witness, who had observed the robbery and the foot pursuit, followed them in his car.

About 20 minutes later, having abandoned the car, appellant and the driver were arrested while seated on a bus bench. Appellant had Ms. Dingman's watch and money in his pocket.

By amended information appellant was charged with the robbery of Ms. Dingman (count I) and Ms. Pantoja (count II). A jury convicted him of both. The trial court sentenced appellant to a five-year state prison term on count I (the upper term for second degree robbery), and a concurrent five-year term on count II.

---

[1]As a result of the struggle Ms. Dingman sustained bruises across her stomach and shoulders. Also, her arms were sore.

[2]Ms. Dingman estimated the struggle as taking two to three minutes, Ms. Pantoja's estimate was three to four seconds.

[3]Jointly charged with appellant, he pleaded guilty and is not a party to this appeal.

## Discussion

Appellant does not contest his robbery conviction of Ms. Dingman. Nor does he contest his sentence for that conviction. His sole contention[4] is this: *as to Ms. Pantoja*, the elements of robbery are lacking. We consider this contention.

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.) "Fear" includes fear for "anyone in the company of the person robbed . . . ." (Pen. Code, § 212.)

The elements of robbery[5] are: (1) a taking (2) of personal property (3) in the possession of another (4) from her person or immediate presence (5) against her will (6) accomplished by means of force or fear (7) with an intent to permanently deprive.

Appellant argues three of these elements were not proved.

### 1. *An intent to permanently deprive*

Appellant does *not* claim insufficient evidence of an intent to steal. He concedes there was ample proof he intended to steal both purses.

---

[4]Appellant's other contention—that the trial court erred by not sua sponte instructing on the "necessarily included offense" of grand theft from a person (Pen. Code, § 487, subd. 2.) regarding count II—is spurious. No property was taken from the person of Ms. Pantoja. Further, grand theft from a person is not a necessarily included offense of robbery. (See *People* v. *Bacigalupo* (1991) 1 Cal.4th 103, 127 [2 Cal.Rptr.2d 335, 820 P.2d 559]; *People* v. *Wolcott* (1983) 34 Cal.3d 92, 99 [192 Cal.Rptr. 748, 665 P.2d 520]; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 325, pp. 376-377; 6 Witkin & Epstein, Cal. Criminal Law, *supra*, § 3088, pp. 3754-3757.)

[5]CALJIC No. 9.40 provides:

"[Defendant is accused in [Count[s] ____ of] the information of having committed the crime of robbery, a violation of Section 211 of the Penal Code.]

"Every person who takes personal property in the possession of another, against the will and from the person or immediate presence of that person, accomplished by means of force or fear and with the specific intent permanently to deprive such person of such property, is guilty of the crime of robbery in violation of Penal Code Section 211.

"In order to prove such crime, each of the following elements must be proved:

"1. A person had possession of property of some value however slight,

"2. Such property was taken from such person or from [his] [her] immediate presence,

"3. Such property was taken against the will of such person,

"4. The taking was accomplished either by force, violence, fear or intimidation, and

"5. Such property was taken with the specific intent to deprive such person, of the property."

■ Rather, he argues there was no proof he specifically intended to steal Ms. Pantoja's purse *because he didn't know one of the purses belonged to her.*

The argument is specious. Knowledge of owner identity is not an element of robbery. (See, e.g., *People* v. *Miller* (1977) 18 Cal.3d 873, 880 [135 Cal.Rptr. 654, 558 P.2d 552].)

## 2. *A taking from her immediate presence*

■ Appellant suggests that since there was no physical contact with Ms. Pantoja, the taking was not from her person or immediate presence. Appellant is mistaken.

"The generally accepted definition of immediate presence . . . is that ' "[a] thing is in the [immediate] presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it." ' " (*People* v. *Hayes* (1990) 52 Cal.3d 577, 626-627 [276 Cal.Rptr. 874, 802 P.2d 376].) "Under this definition, property may be found to be in the victim's immediate presence 'even though it is located in another room of the house, or in another building on [the] premises.' " (*Id.* at p. 627.)

"Immediate presence" is satisfied when: the victims have been put in a walk-in refrigerator while money is taken from a cash register (*People* v. *Ramos* (1982) 30 Cal.3d 553 [180 Cal.Rptr. 266, 639 P.2d 908]); the victims are tied up in one room while property is taken from another room (*People* v. *Gordon* (1982) 136 Cal.App.3d 519 [186 Cal.Rptr. 373]); the victim is assaulted in a motel room one hundred seven feet away from the motel office from which the property is stolen (*People* v. *Hayes, supra,* 52 Cal.3d 577, 626-629); a robber crashes through a ceiling into an office, causing the victim to flee, and then steals from the office (*People* v. *Hays* (1983) 147 Cal.App.3d 534 [195 Cal.Rptr. 252]); the victim is lured one-quarter mile away from his car by robbers who attack and kill him and then steal his car (*People* v. *Webster* (1991) 54 Cal.3d 411, 439-442 [285 Cal.Rptr. 31, 814 P.2d 1273]).

The taking of Ms. Pantoja's purse, while she was four to five feet away from it and seeing it taken, was from her immediate presence.

### 3. *Accomplished by means of force or fear*

As appellant notes, it is not enough that there be "force" or "fear." The "force" or "fear" must be the *means* by which the taking was accomplished.[6] As to Ms. Dingman, this element was unquestionably satisfied. Appellant physically struggled with Ms. Dingman in order to take the purses and it was this force which resulted in the taking. (Cf. *People* v. *Welsh* (1936) 7 Cal.2d 209 [60 P.2d 124] [Defendant threw the victim into his car, drove away, told her he wanted sex, and while driving reached over, took her purse, removed cigarettes, returned her purse. Held: no robbery (of the cigarettes)].)

But in order for Ms. Pantoja to also be a robbery victim appellant must have taken her property and he must have accomplished that taking by means of force or fear *as to her*.

■ Since appellant used no force against Ms. Pantoja, the question becomes was *fear* used. An example may illuminate the question.

If, after Ms. Pantoja gave her purse to Ms. Dingman, she had said "Oh, wait a moment I have to get something from my car," and was 100 feet away when she saw appellant wrench her purse from Ms. Dingman and escape— Ms. Pantoja would not be a robbery victim. Irrespective of any fear she might have felt for herself or for Ms. Dingman (Pen. Code, § 212), that fear would *not* have been the means by which appellant accomplished the taking of her purse. Being 100 feet away she was simply too distant to prevent the taking, fear or no fear.

To return to the question: could a reasonable juror have believed appellant's conduct discouraged Ms. Pantoja from trying to prevent the theft of her purse?

This very question was presented to the trial judge in ruling upon appellant's Penal Code section 1118.1 motion. He stated:

"The element of fear in the crime of robbery may be either the fear of unlawful injury to the person, of the person robbed, or . . . of anyone in the company of the person robbed at the time of the robbery.

"This woman is pushing the other victim in the wheelchair, and the purse is in her lap.

---

[6] "Robbery is the . . . taking of . . . property . . . *accomplished by* means of force or fear." (Pen. Code, § 211. Italics added. See *People* v. *Green* (1980) 27 Cal.3d 1, 54 [164 Cal.Rptr. 1, 609 P.2d 468].)

"So it would certainly appear it's a jury question. I think you could argue it to the jury; but as far as 1118 is concerned, I think the people have made enough to get to the jury.

"Before I heard this witness testify [Ms. Pantoja], I assumed she had—she had laid her purse down and gone somewhere else. But the evidence now is that she was right there and it was—and was pushing the chair and momentarily had her attention attracted [*sic*] by her son, who was having trouble with the sweeper.

"The motion under 1118 is denied."

We agree. Substantial evidence permits the reasonable inference that appellant's forceful struggle to wrest the purses from Ms. Dingman caused Ms. Pantoja to be fearful and shocked. Accordingly, she was less inclined or able than she otherwise would have been to prevent appellant from taking her purse.

We therefore find appellant accomplished the taking of Ms. Pantoja's purse by means of fear. All the elements of robbery were satisfied as to Ms. Pantoja.

## Disposition

The judgment is affirmed.

*Lillie, P. J., concurred. Johnson, J., concurred in the judgment only.*

Appellant's petition for review by the Supreme Court was denied July 29, 1993. Kennard, J., was of the opinion that the petition should be granted.