Filed 3/15/13  P. v. Smith CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055127 |
| v. | (Super.Ct.No. RIF148961) |
| TODD MICHAEL SMITH, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Thomas E. Kelly, Judge. (Retired judge of the Santa Cruz Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed with directions.

Rex Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton, and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

The defendant, Todd Michael Smith, also known as "Casper," along with two

others, committed a home invasion robbery of the residence of Amber F. and Harley B., stealing property from the bedrooms of each victim. Defendant had gone to the residence looking for Josh V., whom he blamed for the recent home invasion robbery of defendant's girlfriend. Christina R., also looking for Josh, accompanied defendant and a third male to the residence of Amber and Harley, where they heard Josh could be found. Defendant was convicted of two counts of residential robbery (Pen. Code,[1] §§ 211, 213, subd. (a)(1)(A)) following a jury trial. Defendant eventually admitted one prison prior (§ 667.5, subd. (b)), and one prior conviction for a serious felony (nickel prior). (§ 667, subd. (a).) He was sentenced to an aggregate term of nine years in prison and appealed.

On appeal, defendant argues that (a) there is insufficient evidence to support the conviction of robbery of Harley; (b) the imposition of the increased court security fee, pursuant to the amended provisions of section 1468.5, was improper; and (c) his right to effective assistance of counsel was violated by his trial attorney's failure to adequately challenge his identification. We modify the judgment to reduce the court facility fee, but otherwise affirm.

## BACKGROUND

In December 2009, Marylou O., defendant's girlfriend, was at home with her two children while defendant was in custody. Josh lived in the residence also and was present when two men and a girl came to the residence looking for Josh because Josh owed them money. The men claimed to be members of the Verdugo gang and had guns. The

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

robbers put Marylou's children in a closet. Then the robbers made Marylou load a television, computer, and camera into suitcases, put the property into her car, and made her drive them around Rialto until they located people in another car who took the property. The robbers did not take Josh with them, but Josh ran after them. Josh came back to Marylou's that night and told her everything would be all right. Right after that incident, Marylou kicked Josh out of the residence. On January 15, 2009, defendant was released from custody; he was upset and blamed Josh when he learned of the home invasion robbery.

In the meantime, Christina, whose nickname is "Gemini," wanted to find Josh because Josh had become the boyfriend of Elise, Christina's ex-girlfriend. Marylou told defendant and Christina that she knew where Josh was. Christina figured that if she found Josh, she would find Elise. On January 16, 2009, Christina and defendant went to the residence of Amber and Harley looking for Josh. Amber answered the knock at the door to find Christina, who asked where Josh was. Amber informed Christina she did not know where Josh was and that he did not live there. Christina asked again, and Amber repeated that Josh was not there. Christina then waved behind her and two men came out from behind her. One man was Hispanic and the other was white.

As the two men barged in from behind Christina, the white man struck Amber in the ribs with a walking stick or a cane, forcing her onto the floor. Amber got onto the couch as Christina went into Amber's room and the two men went to Harley's room. Christina started putting things into a bag, including a portable Play Station, two Sega Game Gear devices, three cell phones, and all of Amber's makeup. The two men forced

3

Harley out of his room, hit Harley, and dragged Harley into the kitchen. The Mexican male pinned Harley on the floor in the kitchen with his knee while the white male stole computer equipment from Harley's room. Amber was able to see Harley being struck and dragged into the kitchen. During the robbery, Amber heard one of the male robbers refer to the female as "Christina," while the other called her "Gemini."

As the robbers left, Harley went out the back door, and confronted the robbers in the front with a shovel. One of the robbers told Harley to tell Josh he was dead. When Amber was interviewed by police, she picked defendant out of a six-pack photographic lineup as the person who hit her with the walking stick or pole, although she was not positive. Amber also could not positively identify Christina. However, Amber informed the detective that she was afraid to identify anyone due to fear of retaliation. Based on the information provided, law enforcement conducted searches of defendant's residence as well as Christina's residence. At Christina's residence, officers recovered a Sega Game Boy and a portable Play Station.

Detective Smith interviewed Christina who admitted accompanying defendant and another individual to the residence of Amber and Harley to locate Josh. She referred to defendant as "Casper," but indicated he was also known as Todd, and stated she knew where he lived with Marylou. After the interview, Christina accompanied police in a darkened vehicle and pointed out defendant's residence. While she was incarcerated pending trial, she wrote a letter to the defendant, addressing him as "Casper," asked him how to proceed, and promised to do whatever it took to make things right with him. Christina also wrote in the letter that she understood defendant was showing everyone the

4

paperwork of her original statement to police, although she denied being afraid of repercussions if she were labeled a "snitch." Christina pled guilty to both home invasion robbery counts, but at defendant's trial she denied that defendant was involved in the robbery.

Approximately four days after the robbery, a man identifying himself as Christina's uncle called Amber to inform her that he did not want Christina to do jail time and subtly threatened that "[w]e can do this the easy way or the hard way." A few weeks after the robbery, Amber heard gunshots outside the front of her apartment and later discovered her car had been shot. Amber was afraid that if she cooperated with police there would be retaliation. Therefore, when the police showed her property that had been recovered, she denied it was hers, although at trial she admitted that it was hers.

Defendant was charged by an amended information with two counts of home invasion robbery, in violation of sections 211 and 213, subdivision (a)(1)(A). It was further alleged that he had suffered two prior felony convictions for which he had served prison terms (prison priors) (§ 667.5, subd. (b)), one prior conviction for a serious felony (nickel prior) (§ 667, subd. (a)), and one prior conviction for a serious or violent felony under the Strikes law. (§ 667, subds. (c), (e)(1).) Defendant was convicted of both substantive counts following a jury trial. Defendant made a motion for new trial on the ground of ineffective assistance of counsel, which was denied. In a separate proceeding the defendant admitted the Strike prior, one prison prior and the nickel prior, after which

5

the court agreed to strike the defendant's Strike prior.[2]

On November 28, 2011, defendant was sentenced to the low term of three years on count 1, and received a concurrent three-year term for count 2. The court imposed one additional year for the prison prior enhancement, and an additional term of five years for the nickel prior enhancement, making his aggregate sentence nine years in state prison. In addition to the prison term, the court imposed a restitution fine in the amount of $400 pursuant to section 1202.4, subdivision (b), and suspended a parole revocation restitution fine in the same amount pursuant to section 1202.45. The court also imposed a court operations assessment of $40 for each count, for a total of $80 pursuant to section 1468.5, as well as a criminal conviction assessment fee of $30 for each count, for a total of $60 pursuant to Government Code section 70373, and a fine of $10 per conviction for a total of $20 pursuant to section 1202.5. Defendant timely appealed.

## DISCUSSION

**1.      There is Sufficient Evidence to Support the Conviction of Robbery as to Harley.**

Defendant argues that there is insufficient evidence to support the verdict that defendant robbed Harley. Specifically, he argues there is no evidence that any property was in Harley's possession at the time it was taken from Harley's bedroom, and no evidence establishing the value of any stolen property. We disagree.

On appeal, the test of legal sufficiency is whether there is substantial evidence to

---

[2] The court exercised its discretion pursuant to section 1385. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530-531.)

6

support the conviction.  (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)  Evidence that meets this standard satisfies constitutional due process and reliability concerns.  (*People v. Carter* (2005) 36 Cal.4th 1114, 1156.)  While we must determine that the supporting evidence is reasonable, inherently credible, and of solid value, we must also review the evidence in the light most favorable to the prosecution, and must presume every fact that the jury could reasonably have deduced from the evidence.  (*People v. Boyer* (2006) 38 Cal.4th 412, 480.)  Issues of witness credibility are for the jury's determination.  (*Ibid.*; *People v. Jones* (1990) 51 Cal.3d 294, 314.)

Robbery is the taking of personal property in the possession of another against the will and from the person or immediate presence of that person accomplished by means of force or fear and with the specific intent permanently to deprive such person of such property.  (*People v. Clark* (2011) 52 Cal.4th 856, 943, quoting from *People v. Lewis* (2008) 43 Cal.4th 415, 464.)  If the other elements are satisfied, the crime of robbery is complete without regard to the value of the property taken.  (*Clark,* at p. 946; see also *People v. Tafoya* (2007) 42 Cal.4th 147, 170.)

Victims of robbery are limited to those persons in either actual or constructive possession of the property taken.  (*People v. Nguyen* (2000) 24 Cal.4th 756, 764; *People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064.)  A person who owns property or who exercises direct physical control over it has possession of it, but neither ownership nor physical possession is required to establish the element of possession for the purposes of the robbery statute.  (*People v. Scott* (2009) 45 Cal.4th 743, 749.)

The definition of "immediate presence" has been generally understood to mean

7

that the thing is within the reach, observation or control, of the victim, such that he could, if not overcome by violence or prevented by fear, retain his possession of it. (*People v. Douglas* (1995) 36 Cal.App.4th 1681, 1690-1691.) Property may be found to be in the victim's immediate presence even though it is located in another room of the house, or in another building on the premises. (*People v. Prieto* (1993) 15 Cal.App.4th 210, 214.) Something is in the "immediate presence" of a victim if he or she could have retained possession of the property if not prevented by violence or fear. (*People v. Hayes* (1990) 52 Cal.3d 577, 626-627; *People v. Douglas* (1995) 36 Cal.App.4th 1681, 1690-1691.)

It is significant in this case that the defendant and his cohort entered Harley's room, forcibly removed Harley from his room, and detained Harley away from the room as defendant took the property from the room. In such circumstances the California Supreme Court has held that the defendant's use of force in detaining the victim away from his property results in a taking from the presence of the victim although the victim was restrained in a vehicle some distance from his home and office. (*People v. Harris* (1994) 9 Cal.4th 407, 422.)

In the present case, Amber testified that she observed the defendant go to Harley's room, and saw defendant drag Harley from his room, hitting him. After the second male forced Harley down onto the ground in the kitchen, Amber saw the defendant go to Harley's room and remove property. Defendant used force to separate Harley from the possession or presence of property he owned, satisfying the element of robbery that the property be taken from the person or immediate presence of the victim. The value of the property is irrelevant to the question of whether a robbery occurred. (*People v. Tafoya,*

8

*supra,* 42 Cal.4th at p. 170; see also *People v. Simmons* (1946) 28 Cal.2d 699, 705.)

There is substantial evidence to support the conviction of robbery as to Harley.

**2.      Court Security Fees Imposed Pursuant to an Amendment to Section 1465.8 Must Be Reduced to the Statutory Amount in Effect at the Time of Conviction.**

Defendant argues that the imposition of $40 court security fee for each of his two convictions violated ex post facto principles where the amendment which increased the fee from $30 to $40 went into operation after his conviction but prior to sentencing.[3]  We agree.

Section 1465.8, subdivision (a)(1), as amended in 2011, provides in pertinent part, "To assist in funding court operations, an assessment of forty dollars ($40) shall be imposed on every conviction for a criminal offense, including a traffic offense, except parking offenses as defined in subdivision (i) of Section 1463, involving a violation of a section of the Vehicle Code or any local ordinance adopted pursuant to the Vehicle Code."  The original version became operative in 2003, when it was enacted as part of Assembly Bill 1759.  (Stats. 2003-2004, Reg. Sess.)  The original provisions of the statute imposed a fee of $20 for each conviction (*People v. Alford* (2007) 42 Cal.4th 749, 753.)  The amendment increasing the fee to $40 went into effect on October 19, 2010, and remained in effect until July 1, 2011.  (2010 Stats., ch. 720, § 33.)

The fee is mandatory.  (*People v. Woods* (2010) 191 Cal.App.4th 269, 272.)

---

[3]  Defendant was convicted on April 22, 2010, and was sentenced on November 28, 2011.

9

Further, the court security fee must be imposed for each conviction, whether or not the sentence for a count is stayed pursuant to section 654. (*People v. Sharret* (2011) 191 Cal.App.4th 859, 865, citing *People v. Crittle* (2007) 154 Cal.App.4th 368, 370.) Nevertheless, the fee has been held to be nonpunitive, so it may be assessed as against a defendant whose crime was committed before the effective date of the legislation. (*People v. Alford, supra,* 42 Cal.4th at pp. 757-759; *People v. Wallace* (2004) 120 Cal.App.4th 867, 874-875.)

Several cases, considering the applicability of the court facilities fee in Government Code section 70373, have held that the date of the conviction, not the date of the crime, controls application of the statute. (*People v. Lopez* (2010) 188 Cal.App.4th 474, 479; see also *People v. Castillo* (2010) 182 Cal.App.4th 1410, 1413-1415.) *Castillo* involved a defendant like *Alford* whose crime was committed before the operative date of the court facilities assessment, but whose conviction occurred after the effective date. *Castillo* applied the reasoning of *Alford* because the Government Code court facilities fee is similar in nature to the court security fee. (*Castillo,* at p. 1414.)

We have found no cases addressing the applicability of the 2011 amendment to section 1465.8 where the conviction predated the amendment, as happened here. Because the great weight of authority holds that the date of the conviction is controlling, the fee provided by the version of section 1465.8 in effect at the time of defendant's conviction should have been imposed. The fee must be reduced to $30 per conviction, for a total of $60.

10

3. **Defendant's Right to Effective Assistance of Counsel was Not Violated.**

Defendant argues that his right to effective assistance of counsel was violated because his trial attorney failed to adequately challenge the identification evidence. He claims counsel failed to present "exculpatory evidence on the critical issue of identity." He points to the fact that neither victim was able to identify him positively in the photographic lineup or at the preliminary hearing. He relies on a declaration signed by Josh, submitted in support of the motion for new trial, which he describes as exculpatory, but which did not negate the identification of defendant as one of the robbers. He also faults defense counsel for not introducing victim Harley's preliminary hearing testimony to "undermin[e] the already flimsy evidence that appellant was one of the male robbers." We disagree.

We begin with the applicable standard of review. To demonstrate that his right to effective assistance of counsel was violated, defendant must satisfy a two-pronged test: He must show (1) performance below an objective standard of reasonableness by his attorney, and (2) prejudice sufficient to establish a reasonable probability he would have obtained a more favorable result in the absence of counsel's error. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694 [104 S.Ct. 2052, 80 L.Ed.2d 674].) If a defendant fails to show that the challenged actions of counsel were prejudicial, a reviewing court may reject the claim on that ground without determining whether counsel's performance was deficient. (*People v. Mayfield* (1997) 14 Cal.4th 668, 784; *People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008.)

The decision whether to call certain witnesses is a matter of trial tactics, unless the

11

decision results from an unreasonable failure to investigate. (*People v. Jones* (2003) 29 Cal.4th 1229, 1251; *People v. Bolin* (1998) 18 Cal.4th 297, 334.) As such, the decision to call witnesses is ordinarily a trial tactic within the attorney's control. (*People v. Williams* (1970) 2 Cal.3d 894, 905; *People v. Penrod* (1980) 112 Cal.App.3d 738, 751.) A defendant must affirmatively show that the omissions of defense counsel involved a critical issue, and that the omissions cannot be explained on the basis of any knowledgeable choice of tactics. (*People v. Jiminez* (1992) 8 Cal.App.4th 391, 397.)

Where a defendant alleges incompetent investigation or presentation of evidence by trial counsel, he or she must demonstrate that the overlooked evidence would have been exculpatory in some fashion. (*In re Noday* (1981) 125 Cal.App.3d 507, 522.) In other words, the defendant "must show us what the trial would have been like, had he been competently represented, so we can compare that with the trial that actually occurred and determine whether it is reasonably probable that the result would have been different." (*In re Fields* (1990) 51 Cal.3d 1063, 1071; see also *In re Hardy* (2007) 41 Cal.4th 977, 1025.) Where the record sheds no light on why counsel acted in the manner challenged, we will affirm unless counsel was asked for an explanation and failed to provide one or unless there simply could be no satisfactory explanation for the action. (*People v. Lopez* (2008) 42 Cal.4th 960, 966.)

Here, defendant claims that the testimony of Josh and Harley were critical to his defense, describing their evidence as "exculpatory." However, the declaration of Josh merely describes his past relationship with the defendant and does not exculpate the defendant in any way respecting the charges for which defendant stood trial. Josh's

12

declaration merely states that in Josh's opinion there was no bad blood between himself and defendant. Although Josh states he saw defendant frequently on the street during their friendship, that the talked regularly on the telephone and that defendant once gave Josh money for a room when he had nowhere to stay, it does not indicate when these events occurred.

In fact, there is not a single mention of the date of the incident. Simply stated, Josh's declaration represents character evidence and did not undermine the testimony of witnesses, including defendant's own girlfriend, that defendant was upset with Josh after defendant's release from custody on January 15, 2009. Whatever their relationship before that date, Josh's willingness to testify to the matters stated in the declaration would not have affected the outcome. The testimony did not undermine the identification of defendant as one of the male robbers. To the contrary, evidence that the two men met in prison would have had a prejudicial effect that would have outweighed any character evidence Josh could have presented.

Similarly, the fact that Harley's preliminary hearing testimony was not introduced at trial[4] is not a basis for reversal. We are struck by the fact that defendant does not argue that there is insufficient evidence to prove his identity as the robber, nor can he. He was identified in a photographic lineup by both victims and was named by Christina as one of the robbers. Further, it was defendant's girlfriend who was the victim of the earlier home invasion robbery due to Josh's indebtedness (which was not refuted by Josh's

_____

**4** The People were not able to serve a subpoena on Harley to secure his attendance.

declaration) that provided the motive for the instant crime. Moreover, even if Harley's preliminary hearing testimony had been presented at trial, or if his attendance at trial had been secured, evidence of the threats to which he testified at the preliminary hearing would have been admissible. Defense counsel acted reasonably in not calling the victim as a witness or offering his preliminary hearing testimony.

We are also struck by the fact that the issue has been raised on direct appeal as opposed to a petition for writ of habeas corpus. On habeas corpus, defense counsel would have had an opportunity to explain his reasons for doing or not doing the things of which defendant complains. Where the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. (*People v. Gamache* (2010) 48 Cal.4th 347, 391.)

Defendant has failed to establish he was deprived of the effective assistance of counsel.

## DISPOSITION

We modify the judgment to reduce the court security fee to $30 for each of the two counts of conviction, for a total fee of $60. The clerk is directed to prepare an

14

amended abstract of judgment reflecting the modification and to serve it upon the

Department of Corrections and Rehabilitation.  In all other respects the judgment is

affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

KING
J.

15