Filed 8/1/13  P. v. Thomas CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE, | B240708 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA119731) |
| v. | |
| DARNELL JAMES THOMAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John T. Doyle, Judge.  Affirmed as modified.

Jerome McGuire, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

Defendant, Darnell James Thomas, was charged with second degree robbery. (Pen. Code,[1] § 211.)  During trial, however, the prosecutor orally amended the information to charge attempted robbery.  The jury convicted defendant of attempted robbery.  (§§ 664, 211.)  The jury further found the crime was committed for the benefit of a criminal street gang.  (§ 186.22, subd. (b)(1)(C).)  Defendant admitted the truth of the allegations concerning:  2 prior serious felony convictions (§ 667, subd. (a)(1)); 2 prior separate prison terms (§ 667.5, subd. (b)); and 13 prior serious or violent felony convictions (§§ 667, subds. (b)-(i), 1170.12).  The trial court struck the additional punishment under section 667.5, subdivision (b).  Defendant was sentenced to 35 years to life in state prison with a 15-year minimum parole eligibility.  We modify the judgment to award defendant 110 days of conduct credit and to strike the $20 penalty imposed under Government Code section 76104.7, subdivision (a).  We affirm the judgment in all other respects.

## II.  THE EVIDENCE

### A.  The Attempted Robbery

On August 18, 2011, Martha Gomez was walking north on Compton Boulevard near 108th Street.  She was wearing a thin gold chain with a small pearl on it.   She saw two men on bicycles heading south from 107th Street in her direction.  One of the men passed her on the sidewalk.  He was wearing a black sweatshirt.  The second man rode up to her and forcibly pulled the chain from her neck.  The second man was wearing a checkered shirt.  Ms. Gomez did not see the second man's face.  The impact caused her to lose her balance, but she did not fall to the ground.  She had scratch marks on her chest.

---

[1]     Further statutory references are to the Penal Code unless otherwise noted.

Ms. Gomez started to scream. She saw a police car coming around the corner onto Compton Boulevard from 107th Street. She yelled to the officers. She could still see her assailant. She told the officers the guy with the checkered shirt had stolen her chain. The officers saw only two men on bicycles in the area. They detained both of the men. Ms. Gomez identified the man in the checkered shirt as the person who took her necklace. At trial, Ms. Gomez identified defendant as that man.

Ms. Gomez was afraid to testify at trial. She had been ordered to appear as a witness. Ms. Gomez lived in the neighborhood where the crime occurred. She was afraid to testify because she felt someone might hurt her for doing so. On cross-examination, Ms. Gomez admitted no one had threatened her with violence if she testified. Ms. Gomez was certain of her identification of defendant as the perpetrator.

Rosa Avila was walking on 108th Street toward Compton Boulevard. Ms. Avila saw Ms. Gomez. They were friends. Ms. Gomez was screaming. The police officers were still in their patrol car. Ms. Gomez was pointing at the men who stole her chain. The officers stopped the two men. Ms. Avila heard Ms. Gomez identify the man who stole her jewelry. A police officer asked Ms. Avila to look for Ms. Gomez's chain. Ms. Avila found the chain on the ground to the south of where Ms. Gomez was standing. At trial, Ms. Avila identified defendant as the man Ms. Gomez said committed the robbery.

Officers Gilbert Gastelum and Erik Loomis were on patrol in their police car when they saw a woman waving her arms in the air and screaming for help. She said she had been robbed by men on bicycles. She pointed in the direction of two men riding bicycles. The two men had continued to ride southward. There were no other men on bicycles in sight. Officers Gastelum and Loomis detained defendant and the second man. Defendant was wearing a checkered shirt. The other man, De Marcus Smith, was wearing a black hooded sweatshirt. Ms. Gomez identified defendant as the man who robbed her.

On cross-examination, Officer Gastelum testified defendant was wearing a green and white checkered shirt. The police report, however, did not state defendant was wearing a checkered shirt. In the police report, defendant's clothing was described as: "[W]hite shirt, tan shorts, white shoes. Tan shorts and a tan T-shirt." With respect to Mr.

3

Smith, Officer Gastelmum testified, "It was later determined after our investigation that he wasn't involved in the crime." Neither Ms. Gomez nor Ms. Avila said that either of the two men mentioned a gang.

Officer Loomis testified that when he first saw Ms. Gomez she was yelling and screaming. She flagged down the officers. She said someone on a bicycle had just taken something from her.

Officer Francisco Elizarraraz arrived after defendant and Mr. Smith were detained. He described defendant's attire as a tan checker-board shirt. Mr. Smith was wearing a black hooded sweatshirt. Officer Elizarraraz spoke to Ms. Gomez in Spanish. She said she was walking on the sidewalk when defendant passed her on a bicycle. He reached over and snatched a gold chain from her neck. She repeatedly identified defendant as the perpetrator.

## B. The Gang Evidence

### 1. Defendant's gang membership

Prior to the date of the attempted robbery—August 18, 2011—defendant had repeatedly identified himself as a gang member. Officer Mario Leonidas spoke to defendant on February 1, 2009. Defendant said he had been a gang member for approximately 20 years. Defendant used a gang moniker. Officer Leonidas spoke to defendant a second time in July 2010. Defendant again admitted his gang membership. Defendant had a tattoo on one of his arms. It said, "R.I.P." and referred to a gang moniker. The individual's name which was next to the letters "R.I.P." was a well-known member of defendant's gang. That gang member had been killed.

On August 8, 2011, Officer Jorge Guerrero stopped defendant for a registration violation. Defendant admitted he was a gang member and used a variation of his gang moniker. Defendant did not say his gang moniker was "Hunter." On August 14, 2011, Officer Rene Braga spoke to defendant. Defendant was asked about his gang

4

membership. Defendant said he was a member of a gang and his gang moniker was "Hunter." Defendant had gang tattoos.

Detective Erik Shear had known defendant for nearly 12 years. On several occasions, defendant admitted that he was a gang member. His current moniker was often shortened. Defendant was regularly in the company of other gang members.

2. Prosecution witness Detective Shear's testimony about defendant's gang

Detective Shear gave opinions about gangs for the prosecution. Defendant's gang had 800 to 900 members. The gang had numerous subsets. According to Detective Shear, both defendant and Mr. Smith were members of the same gang subset. Mr. Smith had several gang monikers. This was common among gang members. Detective Shear testified: robbery was the gang's primary activity; the present robbery occurred in gang territory; gangs commit violent crimes like robbery in order to instill fear in residents and intimidate them; the atmosphere of fear and intimidation allows gang members to commit crimes unimpeded; the gang's criminal acts remind the neighborhood's inhabitants that the gang is in control; committing violent crimes also aided the gang in recruiting new members; young people in the neighborhood observe that gang membership has its rewards; gang members have cash in their pockets and new possessions, including shoes and cellular telephones; gang members also commit robberies for the cash value; and the money is used to buy things that the gang needs, including weapons, vehicles, narcotics and legal representation. Gang members commit crimes with fellow gang members for a variety of reasons. Working together helps them to evade police. One person can act as a lookout. And if they encounter law enforcement officers, they can scatter in different directions, making their capture more difficult.

In response to a hypothetical question tracking the facts of this case, Detective Shear testified the attempted robbery benefited the gang. It reinforced the atmosphere of fear and intimidation in the neighborhood. Due to this atmosphere, residents were unlikely to contact the police or testify against gang members. This facilitated the gang's

ability to commit additional crimes. The detective's opinion took into account that: the two perpetrators were members of the same subset of a gang; they were together; one could rely on the other to look out for him and to not snitch; the crime occurred in broad daylight in the gang's territory; and the type of crime was consistent with "putting in work" for the gang. Detective Shear explained the crime benefited the gang in terms of the tangible benefit—the gold chain, the intimidation it instilled in residents, and its effect on recruitment. There was no need to announce gang affiliation in connection with the robbery because the entire neighborhood knew what gang operated there.

### 3. Defense witness Jose Gallegos's gang testimony

Mr. Gallegos, a former law enforcement and intelligence officer, testified on the criminal street gang enhancement issue for the defense. Mr. Gallegos had interviewed Ms. Gomez and Ms. Avila. He had also reviewed the police report. Mr. Gallegos disagreed with Detective Shear's opinion concerning the gang aspect of the robbery. Mr. Gallegos noted the perpetrators did not mention their gang. They were not wearing gang colors. They did not threaten the victim. Ms. Gomez's chain was found nearby. In Mr. Gallegos's opinion, this was a random crime of opportunity. On cross-examination, Mr. Gallegos admitted this was the first trial in which he had testified as a expert on whether a crime was committed for the benefit of a criminal street gang. He had never been assigned as a law enforcement officer to a neighborhood where defendant's gang was active. Mr. Gallegos admitted never speaking to a member of defendant's gang. Mr. Gallegos never spoke to any members of the community in which defendant's gang operated. Mr. Gallegos agreed that fear and intimidation were factors gangs rely on to maintain control of a neighborhood and to continue to operate there.

6

## III.  DISCUSSION

### A.  The Gang Enhancement

Defendant challenges the sufficiency of the evidence to support the jury's gang enhancement findings.  He argues there was insufficient evidence he committed the attempted robbery for the benefit of or in association with a criminal street gang and acted with the requisite specific intent.  (§ 186.22, subd. (b)(1).)  Our Supreme Court has held:  "In considering a challenge to the sufficiency of the evidence to support [a gang] enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Wilson* (2008) 44 Cal.4th 758, 806.)  We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.  (*Ibid.*)  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)  'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'  (*Ibid.*)"  (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60; accord, *People v. Jasso* (2012) 211 Cal.App.4th 1354, 1376.)

Substantial evidence supported the gang enhancement findings.  It is well established that the elements of a gang enhancement may be proven by opinion testimony.  (*People v. Xue Vang* (2011) 52 Cal.4th 1038, 1048; *People v. Albillar, supra,* 51 Cal.4th at p. 63; *People v. Gutierrez* (2009) 45 Cal.4th 789, 820.)  Detective Shear was an experienced gang investigator.  Detective Shear was "very familiar" with defendant's gang.  He had first been assigned to foot patrol in the gang's neighborhood 10 years earlier.  He had been involved in wiretap investigations of the gang.  He had dealt with gang informants.  At the time of trial, he was still investigating the gang.  He maintained a close relationship with officers on patrol in the gang's territory.  Detective

7

Shear had spoken to "at least a couple hundred" members of defendant's gang over the years. He spoke with members of the community on a daily or weekly basis. Detective Shear testified that people in the neighborhood were terrified of the gang. It was a challenge to get witnesses and victims to report crimes and later to testify in court. The gang's members were aware of their effect on the community. They counted on it.

Detective Shear explained that members of defendant's gang commit crimes together for several reasons. First, there is strength in numbers. Second, additional "sets of eyes" help the gang members evade the police. Third, after a crime is committed, the perpetrators can run in different directions, making it more difficult for law enforcement officers to catch them. Fourth, if a gang member who is being pursued by law enforcement officers tosses a weapon or drugs, a second gang member can retrieve the item. Fifth, fellow, closely-associated gang members will not testify or inform on each other. Fellow gang members, particularly members of the same subset of the gang, can be counted on to back up each other. Members of defendant's gang had a natural tendency to commit crimes with other members of the same subset. They tended to be the people gang members were closest to and knew the best. The subsets of defendant's gang tended to be people who had grown up together in the same geographical area. They were more likely to back up each other than a fellow gang member not as well known to them. Members of the same gang subset knew their fellow members would not testify against or inform on them. They counted on it.

Detective Shear testified that by committing crimes together in the gang's territory, especially violent crimes, gang members contribute to the gang's survival. They instill fear in the community. They intimidate residents of the neighborhood. The fear and intimidation discourages community members from reporting crimes or testifying against gang members in court. This allows the gang to continue to operate in the area unimpeded. Each time a violent crime is committed in the gang's territory, it reinforces the fear and intimidation. Defendant's gang's territory included a densely populated housing development. The effect of the fear and intimidation generated by gang crime is especially strong in such areas. The fear instilled by gang members

8

committing violent crimes in their own territory also discourages other gangs from encroaching. Gang violence also benefits the gang by recruiting new members. Young people are attracted to the power and respect associated with gang membership, as well as the availability of cash and items of value to them. They are also enticed by the protection gang membership affords.

Detective Shear further explained that robberies benefit the gang in several ways. There are potential tangible benefits including monetary gains. Stolen cellular telephones can be used by gang members or sold for a profit. Jewelry can be sold to pawn shops. Funds acquired through robberies can be used to purchase things of value to the gang— weapons, vehicles, narcotics and legal representation. Defendant's gang frequently committed robberies in order to "put in work" for the gang. Crimes of this nature benefited the gang for all the reasons Detective Shear had testified to.

According to Detective Shear, it was uncommon for gang members to announce their affiliation while committing a robbery in gang territory. It was unnecessary. The residents knew the gang was in control of the neighborhood. The gang characteristics Detective Shear testified to were common to gangs in general and to defendant's gang in particular.

Here, defendant and Mr. Smith were both members of the same gang and the same subset of that gang. Defendant and Mr. Smith were riding bicycles together when defendant grabbed Ms. Gomez's gold chain and yanked it from her neck. The two men rode off together as Ms. Gomez screamed. The crime occurred in the gang's territory. It was perpetrated in broad daylight. The attempted robbery was typical of the type of crime members of defendant's gang frequently committed within their own territory. The jury could reasonably find the necessary gang association from the fact that defendant was in the company of a known fellow gang member when he committed the attempted robbery. The jury could reasonably conclude defendant knew Mr. Smith was a fellow gang member. And given Detective Shear's testimony, defendant could rely on their common membership in committing the crime. The jury could further find defendant acted with knowledge he was within the gang's own territory, where the

9

community was fearful and intimidated, and his crime would go unpunished. The jury could further reasonably conclude defendant was aware that committing the violent crime would reinforce the fear in community. It is of no import that defendant dropped the necklace. The jury could reasonably conclude defendant dropped the necklace not because he had no desire to retain it but: by accident; because Ms. Gomez screamed; or because he saw the police patrol car. The jury could reasonably conclude that it was unnecessary to announce defendant's gang affiliation by attire or verbally; members of the community would know which gang was responsible. The foregoing was substantial evidence supporting the jury's gang enhancement findings. (*People v. Albillar*, *supra*, 51 Cal.4th at pp. 60-63, 68; see, e.g., *People v. Morales* (2003) 112 Cal.App.4th 1176, 1197.)

Defendant argues Detective Shear's testimony "largely consisted of assumptions and untenable conclusions" and "implausibl[e]" opinions. Defendant contends the present crime did not benefit the gang because: Mr. Smith was not involved in the robbery; there was no evidence as to the value of Ms. Gomez's chain; defendant dropped the chain rather than retain it; there was no evidence defendant's gang desired new members or that the present crime would lead to an expansion of membership; contrary to Detective Shear's assertion, wearing gang colors and announcing gang affiliation are important factors demonstrating a crime is gang related; and there was no evidence Ms. Gomez knew this was a gang-related crime.

Defendant's argument is without merit. Its focuses on the specifics of the *present* crime rather than on the characteristics of gangs and gang-related crime in general. Detective Shear's opinion rested on his extensive experience with gangs generally and with defendant's gang in particular. It did not require evidence Mr. Smith conspired with defendant to commit the robbery. Detective Shear testified to the cash value of items acquired in robberies generally as it related to a gang's motivation. Detective Shear's opinion did not require evidence that Ms. Gomez's chain had any particular value or that defendant retained possession of it. Detective Shear described recruitment of new members as a general motivation for gang members to commit robberies in gang

10

territory. New member recruitment is necessary to a gang's survival. The absence of evidence defendant's gang was specifically recruiting new members at the time of the robbery did not undermine Detective Shear's opinion. Detective Shear did not deny that wearing gang colors or announcing gang affiliation are factors indicating the gang-related nature of a crime. He testified only that the absence of such factors did not mean the crime was *not* committed for the benefit of the gang. He explained that when a crime is committed in a gang's territory, the community knows who is responsible. That Ms. Gomez was afraid to testify was evidence from which it could be inferred she knew the crime was gang-related. And, as Detective Shear explained, regardless of whether Ms. Gomez knew the crime was gang-related, the effect on the community would be to intimidate and to instill fear.

### B. Prosecutorial Misconduct In Alleging The Gang Enhancement

Defendant argues: the prosecutor improperly filed a gang allegation in this case; the gang allegation was meaningless; it did not contribute to proof of the charged crime; and it did not increase defendant's sentence; the gang evidence did, however, prejudice the jury, compelling it to find defendant guilty because of his membership in a violent gang; further, introducing improper gang evidence in a weak attempted robbery case denied defendant his due process rights. Defendant asserts that charging the gang allegation was simply a vehicle to place prejudicial gang evidence before the jury.

Defendant did not object in the trial court to the gang allegation or the evidence in support thereof. He did not raise an Evidence Code section 352 objection. He did not assert prosecutorial abuse of discretion or misconduct. As a result, he forfeited the present arguments. (Evid. Code, § 353; *People v. Partida* (2005) 37 Cal.4th 428, 436; *People v. Gray* (2005) 37 Cal.4th 168, 215.)

Even if the issue were properly before us, defendant cites no evidence of any abuse of discretion or misconduct by the prosecutor in charging the gang enhancement. As Division Six of the Court of Appeal for this appellate district held in *People v. Galvez*

(2011) 195 Cal.App.4th 1253, 1260: "[I]t is exclusively within the province of the Legislature to set the penalty for criminal conduct. (E.g., *In re Lynch* (1972) 8 Cal.3d 410, 414.) . . . The prosecutor, in the exercise of discretion, may file any charges and enhancements when they are supported by probable cause. (See e.g., *Davis v. Municipal Court* (1988) 46 Cal.3d 64, 77; Gov. Code, § 26501.)" Defendant has not shown the prosecutor lacked probable cause to charge the gang enhancement.

Even if it was error to allow evidence in support of the gang enhancement, there was no prejudice to defendant. We review the purported evidentiary error under the *People v. Watson* (1956) 46 Cal.2d 818, 836, reasonable probability standard of review. (*People v. Livingston* (2012) 53 Cal.4th 1145, 1162-1163; *People v. Watson* (2008) 43 Cal.4th 652, 686; *People v. Partida, supra,* 37 Cal.4th at p. 439.) Here, it is not reasonably probable the jury would have acquitted defendant of attempted robbery absent the gang evidence. The police arrived while defendant was still within the victim's sight. The victim positively identified defendant as the man who had just torn a chain from her neck. At trial, Ms. Gomez clearly described the manner in which the crime occurred and identified defendant as the perpetrator. There was no evidence suggesting someone else committed the crime. Defendant's trial was not fundamentally unfair. (See *People v. Cowan* (2010) 50 Cal.4th 401, 463-464; *People v. Partida, supra,* 37 Cal.4th at p. 439.)


C. Ineffective Assistance Of Counsel


In a related argument, defendant contends his trial attorney was ineffective for failure to move to: exclude the gang evidence; dismiss the gang allegation; or bifurcate the gang enhancement allegations from the attempted robbery charge. We need not consider whether trial counsel's performance was deficient. To prevail on a claim of ineffective assistance of counsel, a defendant must establish, as a demonstrable reality, that there is a reasonable probability of a different result. (*Strickland v. Washington* (1984) 466 U.S. 668, 694, 697; *People v. Vines* (2011) 51 Cal.4th 830, 875-876; *People v. Lawley* (2002) 27 Cal.4th 102, 136.) Here, as discussed above, defendant has not

shown there is a reasonable probability of a different result had trial counsel succeeded in keeping the gang evidence from the jury.

## D. Lesser Included Offense

Defendant asserts it was prejudicial error not to sua sponte instruct the jury on battery as a lesser included offense of attempted robbery. We find no error. As our Supreme Court explained in *People v. Birks* (1998) 19 Cal.4th 108, 117-118, "Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all of the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations; fn. omitted.]" (Accord, *People v. Jennings* (2010) 50 Cal.4th 616, 667-668.) Robbery is, "The felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211; *People v. Parson* (2008) 44 Cal.4th 332, 349; *People v. Prieto* (1993) 15 Cal.App.4th 210, 213.) Attempted robbery requires a specific intent to commit robbery and a direct but ineffectual act towards its commission. (§ 21a; *People v. Watkins* (2012) 55 Cal.4th 999, 1018; *People v. Medina* (2007) 41 Cal.4th 685, 694.) As defined in section 242, "A battery is any willful and unlawful use of force or violence upon the person of another." Battery requires the use of force or violence upon a person. (§ 242; *People v. Marshall* (1997) 15 Cal.4th 1, 38-39.) But attempted robbery can be committed without force or fear, or by fear alone. (*People v. Vizcarra* (1980) 110 Cal.App.3d 858, 862-863.) Therefore battery is not a lesser included offense of attempted robbery. The result is the same under either the statutory elements or the accusatory pleading test. The conjunctive phrase "force *and* fear" used in the information permitted proof of attempted robbery by either force or fear. (*In re Bushman* (1970) 1 Cal.3d 767, 774-775, disapproved on another point in *People v. Lent* (1975) 15 Cal.3d 481, 486, fn.1; *People v. Marquez* (2007) 152 Cal.App.4th 1064, 1068.) The jury was so instructed.

13

Thus, the jury could have convicted without a showing of battery. The greater offense, attempted robbery, could be committed without any touching. As charged and as pled, battery was not an included offense of attempted robbery. (See *People v. Marquez, supra,* 152 Cal.App.4th at p. 1068 [assault not an included offense of robbery when the offense is pled as by means of "force and fear"]; accord *People v. Parson, supra,* 44 Cal.4th at p. 350.) Both the statutory definition and the instruction refer to force or fear and, as a result for our purposes, battery is not a lesser included offense of robbery.

## E. Sufficiency Of The Evidence

Contrary to defendant's argument on appeal, substantial evidence supported his attempted robbery conviction. We review the evidence in the light most favorable to the judgment. (*People v. Lee* (2011) 51 Cal.4th 620, 632; *People v. Avila* (2009) 46 Cal.4th 680, 701.) Defendant rode up to Ms. Gomez on his bicycle and forcibly removed a chain from her neck. However, he dropped the necklace and rode away. The jury could reasonably conclude defendant intended to permanently deprive Ms. Gomez of her property by force or fear. The jury could infer from the evidence that defendant dropped the chain either by accident or intentionally when Ms. Gomez began to scream or when he saw the police vehicle. Hence, substantial evidence supported his conviction. This argument is frivolous.

## F. Victim's Reluctance To Testify

Defendant asserts evidence Ms. Gomez was afraid to testify was irrelevant and prejudicial. That contention is without merit. As our Supreme Court has repeatedly held: "Evidence that a witness is afraid to testify or fears retaliation for testifying is relevant to the credibility of that witness and is therefore admissible. (*People v. Malone* (1988) 47 Cal.3d 1, 30; *People v. Warren* (1988) 45 Cal.3d 471, 481; see generally Evid. Code, § 780.)" (*People v. Burgener* (2003) 29 Cal.4th 833, 869; accord, *People v. Valdez* (2012)

14

55 Cal.4th 82, 135-136; *People v. Mendoza* (2011) 52 Cal.4th 1056, 1084.)  The witness's fear need not be linked to the defendant.  (*People v. McKinnon* (2011) 52 Cal.4th 610, 668; *People v. Guerra* (2006) 37 Cal.4th 1067, 1142, clarified on another point in *People v. Rundle* (2008) 43 Cal.4th 76, 151.)  The trial court had no duty to give a limiting instruction to the jury absent defendant's request.  (*People v. Valdez, supra,* 55 Cal.4th at p. 139; *People v. Sapp* (2003) 31 Cal.4th 240, 301.)

## G.  Cumulative Error

Defendant argues the cumulative error in this case denied him a fair trial.  We have not found any prejudicial error.  Since there was no error, there was no cumulative error.  (*People v. Watkins, supra,* 55 Cal.4th at p. 1036; *People v. McKinzie* (2012) 54 Cal.4th 1302, 1369.)

## H.  Sentencing

### 1.  Presentence conduct credit

Defendant was arrested on September 12, 2011 and sentenced on April 19, 2012.  Defendant received credit for 221 days in presentence custody plus 66 days of conduct credit.  In awarding the conduct credit, the trial court may have relied on section 2933.1, subdivision (a) (15 percent of 221 is 33).  Section 2933.1, subdivision (a) limits presentence conduct credit to 15 percent of custody credit when a defendant is convicted of a violent felony as defined in section 667.5, subdivision (c).  Here, defendant was convicted of attempted robbery.  Attempted robbery is not a violent felony.  (§ 667.5, subd. (c).)  With the exception of attempted murder, an attempt to commit a crime listed in section 667.5, subdivision (c) is not a violent felony.  (*People v. Ibarra* (1982) 134 Cal.App.3d 413, 424-425; see *In re McSherry* (2007) 157 Cal.App.4th 324, 330.)  Because attempted robbery is not a violent felony, the 15 percent limitation on

15

presence conduct credit is inapplicable. Because he committed the present offense on August 18, 2011, defendant should have received 110 days of conduct credit under section 4019, subdivisions (b), (c) and (f). (*People v. Garcia* (2012) 209 Cal.App.4th 530, 537-539; Stats 2010, ch. 426, § 2.) Because he was convicted of a serious felony (§ 1192.7, subds. (c)(19) & (c)(39)), defendant was ineligible for day-for-day credit. (§ 2933, subd. (e)(3) as amended by Stats. 2010, ch. 426, § 1; *People v. Garcia, supra,* 209 Cal.App.4th at pp. 538-539.)

## 2. Deoxyribonucleic Acid Penalty

At sentencing, the trial court imposed: restitution fines (§§ 1202.4, subd. (a), 1202.45); a $30 court facilities assessment (Gov. Code, § 70373, subd. (a)); a $40 court operations assessment (§ 1465.8, subd. (a)(1); and a $20 "DNA fee." According to the abstract of judgment, the "DNA fee" was imposed under Government Code section 76104.7, subdivision (a). At the time defendant committed the present offense, on August 18, 2011, Government Code section 76104, subdivision (a) stated, "Except as otherwise provided in this section, in addition to the penalty levied pursuant to Section 76104.6, there shall be levied an additional state-only penalty of three dollars ($3) for every ten dollars ($10), or part of ten dollars ($10), in each county upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses, including all offenses involving a violation of the Vehicle Code or any local ordinance adopted pursuant to the Vehicle Code." The penalty did not apply to restitution fines. (Gov. Code, § 76104.7, subd. (c)(1); §§ 1202.4, subd. (e), 1202.45.) Moreover, the Government Code section 76104.7, subdivision (a), state-only deoxyribonucleic acid penalty did not apply to the court operations assessment (§ 1465.8, subd. (b)) or the court facilities assessment. (Gov. Code, § 70373, subd. (b).) The section 76104.7, subdivision (a) penalty did not apply to any of the fees or fines imposed in this case. Therefore, the judgment must be modified to strike the $20 penalty under Government Code section 76104.7, subdivision (a).

16

## IV. DISPOSITION

The judgment is modified to award defendant 110 days of conduct credit and to strike the $20 penalty imposed under Government Code section 76104.7, subdivision (a). In all other respects, the judgment is affirmed. Upon remittitur issuance, the clerk of the superior court must amend the abstract of judgment to reflect the judgment as modified and deliver a copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P.J.


I concur:



KRIEGLER, J.

17

MOSK, J., Concurring,

That the facts here support a gang enhancement is a stretch.  Generally, expert testimony supporting the requirements for a gang enhancement is considered substantial evidence.  That being so, I concur.  Whether there are any meaningful limitations on a gang enhancement based on a gang expert's testimony has to await further judicial clarification.


MOSK, J.