Filed 5/22/24  P. v. Lofton CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRYAN KEITH LOFTON,<br><br>    Defendant and Appellant. | D083313<br><br><br><br>(Super. Ct. No. BAF2100606) |

APPEAL from a judgment of the Superior Court of Riverside County, Rene Navarro, Judge.  Affirmed.

Stephanie M. Adraktas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

Bryan Keith Lofton appeals his second degree robbery conviction. Lofton contends that the jury lacked substantial evidence to find he used force or fear to commit the offense and that he received ineffective assistance of counsel. He also argues the trial court erred in allowing the People to amend the information late in the trial, that the court committed reversable error by failing to give the jury a unanimity instruction, and the court abused its discretion when declining to dismiss Lofton's prior strike. Finding no merit to any of these claims, we affirm.

# II. BACKGROUND

## A. *Factual Background*

In May 2021, Lofton entered a convenience store in Riverside County, armed with a screwdriver in his pocket. He walked the aisles, grabbed items off shelves, and stuffed them in his waistband underneath his shirt. He also removed cleaning products from shelves, pouring their contents into a bottle.

The assistant store manager, T.A., watched Lofton on the store's surveillance cameras from a back office. When Lofton made his way to the employee rest area, T.A. came out of the office and asked Lofton what he was doing, which appeared to startle Lofton. As the two stood four to five feet apart, Lofton pulled out of his pocket a screwdriver, which had an orange handle and was seven or eight inches long. He held the screwdriver down at his side for 10 to 15 seconds before putting it back in his pocket.

T.A. believed Lofton pulled out the weapon to stab him, which made T.A. fear for his life. Though he looked calmly at Lofton, T.A. remained afraid while the screwdriver was displayed. His eyes never left Lofton's face as he continued to assess the situation and prepared to protect himself. He told Lofton to leave the store.

Lofton then walked down the aisles while T.A. walked to the front of the store continuing to observe Lofton. Lofton removed at least some of the items from his waistband and placed them on the floor. He then took some candy, put it in his pocket, and walked out of the store. T.A. was about 15 feet away when Lofton took the candy, and he did not confront Lofton. T.A. called the police after Lofton left.

Only one to two minutes elapsed from the time T.A. asked Lofton to leave the store until Lofton exited the premises. Lofton was arrested a couple of blocks away with small, yellow candies on the ground near him.

B.    *Procedural Background*

1.    Charges and Preliminary Hearing

The Office of the Riverside County District Attorney charged Lofton with one count of robbery (Pen. Code,[1] § 211), and an enhancement for personal use of a deadly and dangerous weapon, which prosecutors identified as a knife (§§ 12022, subd. (b)(1), 1192.7, subd. (c)(23)). At the preliminary hearing, T.A. identified Lofton's weapon as a screwdriver, or an icepick, with an orange handle. The prosecutor and Lofton's counsel followed suit, repeatedly referring to the weapon as a screwdriver, and occasionally as an icepick. Responding officer and lead investigator, Deputy Sheriff David Solis, testified that officers found Lofton with an orange knife.

T.A. also testified that he was not afraid and that he laughed in response to Lofton's production of the screwdriver. But after refreshing his memory with a police report, T.A. acknowledged telling Deputy Solis that he was afraid. T.A. later testified that he interpreted Lofton's actions as a

---

[1]    All further undesignated statutory references are to the Penal Code.

3

threat, he was scared, and he feared that in order to escape Lofton would use the weapon to hurt T.A.

    2.    <u>Trial</u>

In his trial testimony, T.A. identified Lofton and explained to the jury how he feared for his life when Lofton displayed the screwdriver. The prosecutor showed T.A. a screwdriver with an orange handle, and T.A. confirmed it was the weapon Lofton used.[2] T.A. also testified that he was unable to identify the type of candy or any other product that Lofton took, and he did not inventory the store's products after the incident.

Deputy Solis also testified at trial. He described seeing yellow candy in the area where law enforcement personnel apprehended Lofton, Deputy Solis identified the candy as miscellaneous in his police report, but photographing and collecting the candy "slipped [his] mind." Deputy Solis also confirmed that he booked into evidence the bag from which the orange-handled screwdriver was produced at trial. However, Deputy Solis did not document the screwdriver because Deputy Solis forgot to check the bag's contents, and he did not recall seeing a screwdriver on the date of the incident. He was only aware that the evidence bag contained two knives with red handles, which were found near Lofton when deputies apprehended Lofton. In his police report, Deputy Solis identified the weapon used by Lofton as a knife with an orange handle. Although T.A. told him the weapon was a

---

[2]    The contents of the evidence bag containing the screwdriver remained unknown to the parties until the first day of trial. The parties stipulated to its chain of custody, and the deputy opened the bag for the first time just prior to court proceedings commencing. Although the only item reported as booked into evidence was a knife, the bag contained several other items, including the screwdriver and two knives with red handles.

4

screwdriver or icepick, Deputy Solis presumed in his report that T.A. misidentified the weapon.

After the close of evidence, the People moved to amend the information by replacing "knife" with "screwdriver" in the deadly and dangerous weapon allegation. Over Lofton's objection, the trial court allowed the amendment finding no prejudice to Lofton based on the evidence received both during trial and the preliminary hearing.

In her motion for acquittal under section 1118.1 and in her closing argument, Lofton's counsel did not contest his presence in the store, nor did she challenge the force or fear element of robbery. Instead, she argued the People failed to prove any theft, asserting there was no evidence of what Lofton possessed prior to entering the store, what product was taken from the store, and whether the store sold the candies found with Lofton's property. Lofton's counsel also criticized Deputy Solis's collection and reporting of evidence.

Ultimately, the jury found Lofton guilty of second degree robbery (§ 211). It further found that he used a screwdriver in the commission of the offense, which qualified as a deadly and dangerous weapon (§ 12022, subd. (b)(1)).

### 3. Sentencing

Lofton admitted a prior robbery conviction from 2014, which constituted both a serious felony (§ 667, subd. (a)) and a strike prior (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)). He filed a motion seeking dismissal of the prior strike and weapon enhancement, as well as a stay of the serious felony prior.

In denying the motion, the trial court reviewed the circumstances of the current offense, finding Lofton posed a greater degree of danger to society

5

because he used a weapon to rob a small amount of merchandise and he took as much as he could. The court also analyzed Lofton's criminal history, which involved 17 misdemeanors, two felonies, and many probation and parole violations over the previous 13 years. Lofton's prior offenses included burglaries, assault, driving under the influence, driving with a suspended license, vandalism, petty theft, disturbing the peace, and possession of a stun gun. Based on this background, the court found Lofton extremely likely to reoffend, with poor prospects of employment.

However, on its own motion[3], the court struck the serious felony prior because although it involved Lofton forcibly breaking free from a robbery victim's grasp after taking her phone charger, Lofton did not use threats or a weapon, and he did not injure the victim.

The court then imposed the low term of two years for the current robbery, doubled to four years due to the prior strike. It imposed an additional year for using a deadly and dangerous weapon, resulting in a total sentence of five years. Lofton's timely appeal followed.

### III. DISCUSSION

Lofton seeks reversal on five grounds: (A) insufficiency of the evidence to support a robbery conviction; (B) ineffective assistance of counsel; (C) the effect of amending the information after the close of the evidence; (D) the lack of a unanimity instruction for the act supporting robbery; and (E) the trial court's refusal to dismiss his prior strike. After examining Lofton's arguments, we affirm the trial court.

---

[3] While Lofton moved the court to stay punishment on his serious felony prior, the court instead exercised its discretion pursuant to section 1385 and dismissed it.

6

*A.    Robbery*

Focusing on the force or fear element of robbery, Lofton claims his conviction was not supported by substantial evidence.  He argues no credible proof supported that he threatened T.A. with the screwdriver, that T.A. was actually afraid, or that he used force or fear to take the candy or accomplish his exit from the store.

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.)  " '[F]ear is sufficient if it facilitated the defendant's taking of the property.  Thus, any intimidation, even without threats, may be sufficient.' " (*People v. Montalvo* (2019) 36 Cal.App.5th 597, 612.)

In commercial settings the law recognizes that employees exercise constructive control over their employer's property.  (*People v. Estes* (1983) 147 Cal.App.3d 23, 26.)  Therefore, a robbery may occur where force or fear is used on an employee who tries to maintain control over those items.  (*Ibid.*)

Robbery "is a continuing offense that begins from the original taking until the robber reaches a place of relative safety." (*People v. Estes*, *supra*, 147 Cal.App.3d at p. 28.)  "[T]here is no single 'temporal point at which the elements [of robbery] must come together' in order to constitute the offense of robbery; . . . 'no artificial parsing is required as to the precise moment *or order* in which the elements are satisfied.' " (*People v. Hodges* (2013) 213 Cal.App.4th 531, 540, italics added.)

When a defendant challenges the sufficiency of the evidence supporting a conviction, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a

7

reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 780.) We do " ' "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." ' " (*People v. Helzer* (2024) 15 Cal.5th 622, 646.) Unless it is clearly shown that " 'on no hypothesis whatever is there sufficient substantial evidence to support the verdict' " we will not reverse. (*People v. Zaun* (2016) 245 Cal.App.4th 1171, 1174.)

Here, Lofton took items from shelves and when confronted displayed a screwdriver. T.A. feared for his life as a result, believing Lofton intended to stab him. There was some evidence that this fear dissipated because T.A. testified that he was afraid until he determined Lofton was not going to use the screwdriver. However, the jury heard that testimony, saw T.A.'s demeanor as he described the events, heard his tone of voice, and drew an opposite conclusion. We do not reweigh that evidence here. (See, *People v. Collins* (2021) 65 Cal.App.5th 333, 344–345 [a victim's repeated assertions that he felt no fear during store robbery is not binding on jury but merely creates inconsistency for trier of fact to resolve].)

The jury's conclusion was also corroborated by T.A.'s testimony that he did not closely follow Lofton after the initial confrontation or prevent him from leaving with the stolen property. Instead, T.A. went to the front of the store and waited for Lofton to leave, and despite confronting Lofton prior to Lofton pulling out the screwdriver, T.A. did not confront Lofton again when

Lofton grabbed the candy or left the store.[4] When we draw all inferences in favor of the judgment, substantial evidence supports that the fear Lofton instilled in T.A. by producing the screwdriver not only remained until Lofton exited the store, but also facilitated that exit and Lofton's additional taking of candy.

Further, we see no reason to separate the crime into separate, distinct acts. Inside of a few minutes, Lofton took some items, hid them from view in his waistband, drew a screwdriver when confronted by T.A. causing fear in T.A., left some of the originally taken store property but took other products, and then exited the store. Which items Lofton took prior to or after displaying a weapon and instilling fear in T.A. is inconsequential here. The robbery started when Lofton began taking products off the shelves and ended when he left the store.

Under these circumstances, there was sufficient evidence that Lofton used fear to obtain the store's merchandise elevating the theft to a robbery.

B.    *Ineffective Assistance of Counsel*

Lofton makes three arguments to show his trial counsel was ineffective. First, Lofton contends his counsel failed to cross-examine T.A. with T.A.'s preliminary hearing testimony in which T.A. stated he was not afraid during his interaction with Lofton. Second, Lofton claims Deputy Solis's testimony contained hearsay and an improper opinion of guilt, to which trial

---

[4]    The existence of a store policy against confronting shoplifters, and the significance of that fact to whether T.A.'s actions reflected fear or not, is also a jury's decision. (*People v. Collins*, *supra*, 65 Cal.App.5th at p. 345 ["Were we to treat the simple existence of a store policy mandating that shoplifters not be confronted as dispositive, there could *never* be a robbery inside stores with such a policy"].)

counsel did not object. Finally, Lofton asserts his counsel failed to object during closing argument to prosecutorial misconduct.

To establish ineffective assistance of counsel, Lofton must show (1) that his counsel's representation " 'fell below an objective standard of reasonableness under prevailing professional norms,' " and (2) a reasonable probability that, but for counsel's failings, the result would have been more favorable to him. (*People v. Hoyt* (2020) 8 Cal.5th 892, 958.) In determining whether the requisite showing has been made, " ' "trial counsel's tactical decisions are accorded substantial deference." ' " (*People v. Rices* (2017) 4 Cal.5th 49, 80.) "On direct appeal, a finding of deficient performance is warranted where '(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.' " (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165.)

Starting with T.A.'s preliminary hearing testimony, although he initially denied fear, after being confronted with Deputy Solis's police report, T.A. confirmed he was afraid Lofton would use the weapon to hurt him. As such, that testimony is not exculpating. Additionally, the record shows that instead of focusing on whether Lofton used force or fear during the confrontation with T.A., defense counsel at trial made a tactical decision to target the lack of evidence of stolen property and the competence of Deputy Solis's investigation. We find defense counsel's strategic choices reasonable based on T.A.'s preliminary hearing and trial testimony reflecting he experienced fear, the absence of direct evidence of what was taken from the store, and the way in which Deputy Solis documented the stolen property and weapons.

Next, Lofton complains his attorney failed to stop admission of Deputy Solis's hearsay testimony. Specifically, Lofton claims Deputy Solis gave hearsay evidence when he said that by the time he arrived at the scene, other deputies had detained an individual matching the description given to dispatch by store employees who witnessed what occurred. Further, Deputy Solis testified another deputy discovered knives within arm's reach of Lofton, and another deputy put the screwdriver into an evidence bag. However, no out-of-court statements were elicited during this challenged testimony, so the hearsay rule does not apply. (Evid. Code, § 1200, subd. (a).) Also, Lofton's counsel did not dispute Lofton's involvement in the incident, which is the relevance of this evidence, and we find that strategy reasonable given that T.A. identified Lofton, as did Deputy Solis after watching the surveillance footage of the incident.

Deputy Solis also testified that T.A. admitted being in fear of Lofton, which is hearsay. (Evid. Code, § 1200, subd. (a).) But as discussed above, Lofton's counsel made a tactical decision to focus both on the absence of evidence regarding what was taken and the police investigation rather than highlight the fear component in this case. The attorney's reasonable approach sufficiently justifies the lack of an objection.

Lofton further claims his counsel should have objected when Deputy Solis improperly opined that Lofton was guilty of robbery. Lofton bases this claim on Deputy Solis's testimony that he "responded to a robbery that occurred"; he was dispatched for a robbery; T.A. "g[a]ve [him] an indication that a robbery had occurred" and identified Lofton as the person who committed the robbery; and "small robbery crimes like this" often do not require the same evidence collection as more complex crimes. This testimony falls short of an express opinion of guilt. This is supported by Lofton's

11

counsel undermining Deputy Solis's reliability and assessment of the incident by questioning Deputy Solis's failure to collect or report any stolen property and his misreporting of the weapons involved. Focusing on the perceived flaws in Deputy Solis's capabilities and investigation, instead of objecting to his few general references to the term robbery, was not objectively unreasonable.

Additionally, Lofton argues that his counsel should have objected to the prosecutor's misconduct, which involved misstatements of the facts and evidence during closing argument. Lofton points to alleged inaccuracies in the prosecutor's statements that T.A. "didn't go after" Lofton and T.A. "backed up" when Lofton produced the screwdriver. He also claims the prosecutor misstated the order of events by saying "[Lofton's] holding the screwdriver because [T.A.] told him to put the stuff back and he got mad." At best, these are slight mistakes. Further, the trial court instructed the jury that "[n]othing that the attorneys say is evidence," and we presume the jury understood and followed that instruction. (See, *People v. Wilson* (2023) 89 Cal.App.5th 1006, 1014.) The trial court also overruled counsel's objection to other alleged factual misstatements by the prosecutor because the court properly instructed the jury on this issue. Given these circumstances, it is unlikely an objection would have been successful. The attorney showed reasonable tactical decisions by not drawing attention to these minor statements by objecting.

Finally, Lofton contends the prosecutor misstated the law by saying it did not matter that Lofton held the screwdriver down by his side or that he did not have the screwdriver out when he pulled the candy off the shelf. Lofton ignores the prosecutor's additional statements that "the fear was already instilled into [T.A.'s] mind at the time [Lofton] took the candy," and

12

that "[w]hat matters is [Lofton's] still displaying the weapon in a way that says, yeah, this is a threat." Based on these additional statements, we find no misstatement of the law (see, § 211; *People v. Montalvo, supra,* 36 Cal.App.5th at pp. 611–612) to which Lofton's defense counsel needed to object.

In sum, Lofton has failed to establish that he received ineffective assistance of counsel.

C. *Amendment of the Information*

Lofton argues the trial court improperly allowed the information to be amended after the close of evidence. He contends that ruling violated his due process rights. By leaving the knife description on the information through trial, Lofton's attorney could not object to the knife evidence coming before the jury. According to Lofton, this meant that once the court allowed the amendment, the knife evidence prejudiced Lofton because it portrayed him as a dangerous person who would threaten someone with a weapon.

"Due process requires that 'an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' " (*People v. Graff* (2009) 170 Cal.App.4th 345, 360.) "Thus, it is the rule that 'a defendant may not be prosecuted for an offense not shown by the evidence at the preliminary hearing or arising out of the transaction upon which the commitment was based.' " (*Ibid.*)

Consistent with that rule, section 1009 allows amendment of an information "at any stage of the proceedings, up to and including the close of trial," as long as there would be no prejudice to the defendant and the amended charge is shown by the evidence at the preliminary hearing. (*People v. Graff, supra,* 170 Cal.App.4th at pp. 361–362; § 1009.) A trial

13

court's allowance of an amendment under section 1009 " 'will not be disturbed on appeal absent a clear abuse of discretion.' " (*People v. Hamernik* (2016) 1 Cal.App.5th 412, 424.)

Here, the only change in the amended information was the replacement of "knife" with "screwdriver" in the deadly and dangerous weapon allegation. At the preliminary hearing, T.A. identified Lofton's weapon as a screwdriver or icepick, and after refreshing his recollection with a police report, he confirmed describing to Deputy Solis a screwdriver with an orange handle. While questioning both T.A. and Deputy Solis during the preliminary hearing both the prosecutor and Lofton's counsel repeatedly referred to Lofton using a screwdriver, which both witnesses affirmed. Both attorneys also referred to Lofton using a screwdriver in their closing arguments at the preliminary hearing. As such, the evidence at the preliminary hearing supported that Lofton used a screwdriver in his commission of the offense. Lofton was therefore sufficiently apprised of the amended charge to prepare and present a defense at trial. We see no due process violation.

As for the claimed prejudice, Lofton cites *People v. Riser* (1956) 47 Cal.2d 566, 577 (overruled on other grounds in *People v. Chapman* (1959) 52 Cal.2d 95; and *People v. Morse* (1964) 60 Cal.2d 631), which held that "[w]hen the prosecution relies . . . on a specific type of weapon, it is error to admit evidence that other weapons were found in [the defendant's] possession, for such evidence tends to show not that defendant committed the crime, but . . . that [the defendant] is the sort of person who carries deadly weapons." However, despite the rule in *Riser*, other weapons evidence may be admissible for different purposes. (*People v. Smith* (2003) 30 Cal.4th 581, 613 [allowing other weapons evidence to show defendant's state of mind]; *People v. Carpenter* (1999) 21 Cal.4th 1016, 1047–1048 [finding

14

tactical decision by defense counsel to allow admission of other weapons evidence to challenge a witness's credibility].)

The evidence regarding the knives was relevant to Deputy Solis's credibility as well as his proficiency in reporting and collecting evidence from the crime scene. Indeed, much of the knife evidence was elicited by Lofton's counsel, and she used that evidence to undermine Deputy Solis's investigation and support Lofton's defense that no theft had occurred. That strategy outweighed any potential improper inferences from Lofton's possession of the knives, and we find it unlikely that Lofton's counsel would have sought exclusion of the knife evidence if the People amended the information earlier. We therefore reject the premise of Lofton's prejudice argument and find no error in allowing the amendment.

D.    *Unanimity Instruction*

According to Lofton, the robbery charge was based on two separate acts: his taking of items before being confronted by T.A., and his taking of candy on his way out of the store. He therefore contends the trial court erred by not instructing the jury that it must unanimously agree on the act supporting its verdict.

"As a general rule, when violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged, either the state must select the particular act upon which it relied for the allegation of the information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty." (*People v. Jennings* (2010) 50 Cal.4th 616, 679.) However, "no unanimity instruction is required if the case falls within the continuous-course-of-conduct exception, which arises 'when the acts are so closely connected in time as to form part of one transaction.' " (*Ibid.*)

15

Lofton's actions in the store occurred over only a few minutes and focused on a single objective:  to deprive the store of merchandise without paying.  It is immaterial that in the crime's short duration Lofton took some items, used fear to keep them, and then exchanged them for other items as he left the store.  As stated above, the robbery started when Lofton began taking products off the shelves and ended when he left the store.  Lofton's actions took place very quickly and are therefore not divisible.  His continued course of conduct formed a single robbery.  Accordingly, a unanimity instruction was not required.

## E.     *Dismissal of the Prior Strike*

Lofton argues the trial court abused its discretion in declining to dismiss his prior strike.  He claims the prior conviction was remote in time, both the prior strike and current offense were far less serious than a typical robbery, the trial court should have considered his apparent mental health challenges, and the trial court erroneously assumed his employment prospects were poor.

The "Three Strikes" law restricts a court's discretion in sentencing repeat offenders.  (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)  It " 'establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made." ' "  (*Ibid.*)  In making that determination, " 'the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not

16

previously been convicted of one or more serious and/or violent felonies.' " (*Ibid.*)

"[A] court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 374.) Under that standard, reversal is not warranted unless the "decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

Turning to Lofton's arguments, his prior 2014 robbery was not remote. He was in and out of custody in the intervening years, continuing to reoffend each time he was released. (See, e.g., *People v. Vasquez* (2021) 72 Cal.App.5th 374, 390 [a prior strike is not remote if defendant continues to reoffend in the interim, and the court should consider whether incarceration limited the opportunity to commit additional crimes].) We also disagree the court failed to consider his "apparent mental health challenges." No such challenges were raised in Lofton's motion or oral argument at sentencing. Additionally, the court noted that Lofton denied any mental health issues except ADHD, for which he was taking medication at the time of the offense. As for the seriousness of the current and prior robberies and Lofton's employment prospects, considering his extensive criminal history and the use of a deadly weapon in the current offense, Lofton has failed to show that no reasonable person could agree with the trial court's decision. The seriousness of the current and prior offenses was also accounted for when the court imposed the low term for the current robbery and struck the serious felony prior.

In sum, Lofton has not shown the trial court abused its discretion in declining to dismiss the prior strike.

## IV. DISPOSITION

The judgment is affirmed.

RUBIN, J.

I CONCUR:

McCONNELL, P. J.

18

DO, J., Dissenting.

I respectfully dissent. In my view, there is not substantial evidence to support the finding that Bryan Keith Lofton's taking of candy from a convenience store was accomplished by force or fear so as to elevate a petty theft to robbery.

I.

*The Assistant Store Manager's Testimony*

" 'Substantial evidence' means that evidence which, when viewed *in light of the entire record*, is of solid probative value, maintains its credibility and inspires confidence that the ultimate fact it addresses has been justly determined." (*People v. Conner* (1983) 34 Cal.3d 141, 149 (*Conner*), italics added.) To explain why I conclude there is insufficient evidence to sustain a robbery conviction, I provide additional detail about the testimony of T.A., the assistant store manager. He testified as follows.

The manager was at the front of the convenience store when Lofton entered. Lofton started talking to himself while walking around the store "grabbing items" and "pouring something into a cup or a bottle." The liquids Lofton was taking looked like cleaning fluid. The manager thought to himself, "It was weird."

Store policy prohibited the manager from confronting or interacting with shoplifters in this type of situation. The manager refrained from approaching Lofton. He decided instead to watch Lofton on the store's surveillance cameras from a back office behind a closed door. Lofton continued "pouring stuff in bottles," and the manager saw him pull items from the aisle shelves and put them in his waistband.

Lofton began to walk to the back of the store towards the employee break room and the back office where the manager was located. When Lofton reached the "foyer entry" to the employee-only area, the manager became concerned that Lofton might steal personal items from his employees' lockers. He decided to confront Lofton.

The manager surprised Lofton by suddenly opening the back office door, which was a few feet away from where Lofton was standing in the foyer. After opening the door, the manager said to Lofton, "What the F you doing?"

The manager "startled" Lofton, who "[j]umped back." Lofton dropped the bottle he had been using to collect various liquids, and he then pulled something out of his pocket. "It looked like a screwdriver or [an] ice pick." The manager quickly determined it was a screwdriver with a four- to five-inch "metal part." Lofton held the screwdriver "for a couple of seconds at best" or "no more than 10, 15 seconds"—down at waist level—and then put it back in his pocket. He did not wave or swing the screwdriver, or lunge with it at the manager.

When the prosecutor asked what was going through his mind "at the time" he saw the screwdriver, the manager said: "I seen he wasn't going to use it." The prosecutor then asked, "Were you afraid he was going to use it[?]" He answered, "*initially, yes.*" (Italics added.) Asked what he was afraid of, he said, "Lose my life," meaning "[g]etting stabbed in the wrong place." The manager said he was afraid until he concluded, Lofton "just pulled it out as a scare tactic." Lofton put the screwdriver back in his pocket, the manager said, "when he noticed *it didn't really affect me.*" (Italics added.)

Lofton did not display the screwdriver again.

Asked what he did next, the manager testified: "Escorted him out. It's time to go. Followed behind him, make sure he left." The manager told

2

Lofton to leave the restricted area, return the items he had taken, and leave the store. Lofton immediately began to comply.

As they both started walking down the aisles, they "broke away" from each other. Lofton went down the aisles, and started removing the "stuff" he had put in his waistband and put the items down or threw them on the floor. The manager walked to the front of the store. Lofton then began to walk to the front. But as he passed "the candy aisle that's directly in line with the [front] door," he grabbed some candy and put it in his pocket right before walking out. The manager thought, "it didn't make sense to me."

After Lofton left, the manager called the police "[b]ecause it was what we have to do," according to store policy.

## II.

### *There Was Insufficient Evidence That the Candy Taking Was Accomplished by Force or Fear*

Lofton contends his robbery conviction cannot stand because the prosecution failed to establish sufficient evidence of a "nexus between the use of force or fear and the act of obtaining or retaining property from the store." I agree.

### A.

Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, *accomplished* by means of force or fear." (Penal Code, § 211, italics added.) "Theft by larceny may be committed without force or the threat of violence and may be completed without the victim ever being present. (See § 484, subd. (a).) To elevate larceny to robbery, *the taking must be accomplished by force or fear* and the property must be taken from the victim or in his

3

presence." (*People v. Gomez* (2008) 43 Cal.4th 249, 254 (*Gomez*), italics added.)

The taking element of robbery consists of both "a caption"—achieving possession of the property, and "an asportation"—carrying the property away. (*Gomez, supra*, 43 Cal.4th at pp. 255, 256.) Because asportation is the final element of robbery, and it is " 'not confined to a fixed point in time' " but rather continues " 'as long as the loot is being carried away to a place of temporary safety' " (*id.* at pp. 256—257), the crime of robbery "is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety" (*People v. Estes* (1983) 147 Cal.App.3d 23, 28).

Although all the elements of robbery must be satisfied before the crime is completed, because it is a continuing offense, "no artificial parsing is required as to the precise moment or order in which the elements are satisfied." (*Gomez, supra*, 43 Cal.4th at p. 254.) It is for this reason that " 'mere theft becomes robbery if the perpetrator, having gained possession of the property without use of force or fear, resorts to force or fear while carrying away the loot.' " (*Id.* at p. 257.) It is robbery whether a perpetrator relies on force or fear to gain possession or to maintain possession. (*Id.* at p. 265.)

However, as our Supreme Court has stated, "*In order to support a robbery conviction, the taking, either the gaining possession or the carrying away, must be accomplished by force or fear*." (*Gomez, supra*, 43 Cal.4th at p. 257.) Put another way, while there is no precise moment in which force or fear must arise before the final element of asportation is complete, there still must be a causal *link* between the force or fear and the taking: "The 'force' or

4

'fear' must be the *means* by which the taking was accomplished." (*People v. Prieto* (1993) 15 Cal.App.4th 210, 215.)

B.

The prosecutor in closing argument told the jury: "The defendant stole candy from the Family Dollar . . . , and he did this by instilling fear in [the store manager] when he pulled this screwdriver out and held it at him. Because of that, the defendant has been charged with robbery with the use of a deadly weapon, the screwdriver."

Thus the prosecutor did not contend, nor was any evidence presented, that Lofton committed robbery by the use of force.

It is also clear why the prosecutor elected to base the robbery count solely on the candy. A robbery could not be based on the items Lofton had removed from his waistband and abandoned, even if initially taken by use of fear. (Cf. *People v. Etheridge* (2015) 241 Cal.App.4th 800, 804 (*Etheridge*) [evidence was insufficient to support robbery conviction where defendant abandoned a stolen steak by throwing it away before he used force on guards; he did not use force or fear to gain or maintain possession]; *People v. Hodges* (2013) 213 Cal.App.4th 531, 537, 541–543 [reversing robbery conviction where trial court rejected defense request for jury instruction that a defendant is guilty of theft but not robbery where he abandoned property before using force].)

It is also questionable whether the prosecutor had proven beyond a reasonable doubt that Lofton had left the store with anything he initially put under his waistband. The manager testified he did not see what items Lofton put in his waistband and he was not certain whether Lofton "put everything that was in his waistband back down on the floor." When asked, he was "not

able to say a specific item that . . . Lofton stole." Other than the candy, the prosecutor failed to present proof of what if anything else Lofton had taken.[1]

C.

Given the prosecutor's election that the taking of candy constituted the robbery—and no evidence was presented to establish anything else was taken—I focus on whether there is substantial evidence the candy was taken by force or fear. (See *Etheridge, supra*, 241 Cal.App.4th at p. 804 [rejecting " 'the Attorney General's claim that [defendant's] robbery conviction can rest upon the taking of the beer, given the prosecutor's concession at trial the evidence created a reasonable doubt regarding theft of the beer and the prosecutor's election that the taking of the steak, and not the beer, was the crux of the robbery' "].) In my view, there is not.

Again, " '[s]ubstantial evidence' means that evidence which, when viewed in light of the entire record, is of solid probative value, maintains its credibility and inspires confidence that the ultimate fact it addresses has been justly determined." (*Conner, supra*, 34 Cal.3d at p. 149.) It "does not mean any evidence, or a mere scintilla of evidence." (*In re Alexander L.* (2007) 149 Cal.App.4th 605, 614; *In re Albert T.* (2006) 144 Cal.App.4th 207, 216–217.) " 'A decision supported by a mere scintilla of evidence need not be affirmed on appeal.' " (*In re Albert T.*, at pp. 216–217.) Further, "while substantial evidence may consist of inferences, such inferences must be a product of logic and reason and must rest on the evidence." (*Id.* at p. 217 [cleaned up].)

---

[1] At most, the prosecutor could have—but did not—charge Lofton with attempted robbery based on the abandoned property.

6

For a robbery, fear means " 'sufficient fear to cause the victim to comply with the unlawful demand for his property.' " (*People v. Morehead* (2011) 191 Cal.App.4th 765, 774.)  Although the defendant need not cause "extreme" fear, the People must prove "the victim was in fact afraid," and "*that such fear allowed the crime to be accomplished.*"  (*Id.* at pp. 772, 775, italics added [cleaned up].)

I agree with the majority there is sufficient evidence to support a finding the store manager experienced fear during his encounter with Lofton.  He testified he was initially afraid of getting stabbed when Lofton removed the screwdriver from his pocket.  The jury moreover necessarily found that Lofton displayed the screwdriver "in a menacing manner" when it found true the weapon enhancement under Penal Code section 12022, subdivision (b)(1).

But I do not agree there is substantial evidence—when viewing the evidence in light of the whole record—that Lofton took the candy by means of fear.  The manager's testimony established the fear he experienced was fleeting and momentary, and had ceased *before* Lofton swiped the candy on his way out of the store.  He testified he was "initially" afraid when Lofton displayed the screwdriver but quickly concluded Lofton was not going to use it.  Even Lofton *himself* "noticed it didn't really affect" the manager.  The manager's fear lasted for "a couple of seconds at best" or "no more than 10, 15 seconds," the duration of time Lofton held the screwdriver.  After Lofton put the screwdriver back in his pocket, the manager resumed his confrontation by instructing Lofton to put back the items taken, "[e]scort[ing] him out" and "ma[king] sure he left."  There is no testimony by the manager he continued to feel fear or re-experienced fear, at any time thereafter.

The majority acknowledges the manager's testimony—"that he was afraid until he determined Lofton was not going to use the

7

screwdriver"—established his fear had "dissipated" by the time Lofton took the candy. (Maj. opn., at p. 8.) It rejects this aspect of his testimony by surmising the jury's guilty verdict shows it must not have believed the manager, perhaps because of his demeanor and tone of voice, and drew an opposite conclusion. (Maj. opn., at p. 8.) But mere disbelief of a witness is not affirmative evidence of a contrary conclusion. (See e.g. *Ayon v. Esquire Deposition Solutions, LLC* (2018) 27 Cal.App.5th 487, 498; *Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204–1205 (*Beck*).) "The rejection of a witness's testimony by the trier of fact has only the effect of removing that testimony from the evidentiary mix. Without more, the disregard or disbelief of the testimony of a witness is not affirmative evidence of a contrary conclusion." (*Beck*, at pp. 1204–1205; accord *People v. Amador* (1970) 8 Cal.App.3d 788, 791 [" 'Of course, as has been pointed out many times, disbelief of evidence is not the equivalent of affirmative evidence to the contrary.' "].)

Thus if we reject the manager's testimony that he was not afraid after the screwdriver was put away, this still begs the question whether fear was the *means* by which Lofton accomplished the candy theft. The majority infers it was, based only on the fact the manager "did not confront Lofton again when Lofton grabbed the candy or left the store." (Maj. opn., at pp. 8–9.) In my view, this ignores the fact the manager continued to confront Lofton about the items in his waistband even after Lofton returned the screwdriver to his pocket, showing he was comfortable enough to confront Lofton at this point in time despite any purported lingering concern about the screwdriver. In other words, the manager's immediate response to Lofton's display of the screwdriver demonstrated the brandishing did not generate sufficient fear in the manager to prevent him from confronting Lofton. Between this initial

encounter and the moment Lofton snatched the candy, there was no evidence of additional interactions between Lofton and the manager that would support the conclusion the manager's fear of Lofton increased during the interim.

The majority's conclusion that the manager's failure to confront Lofton about the candy theft was the product of the fear generated by the initial brandishing fails the substantial evidence test because it ignores other relevant evidence bearing upon that same issue—i.e., the earlier evidence that very same act of brandishing did *not* cause the manager to become too afraid to confront Lofton. It is therefore illogical and unreasonable to infer the manager—just a few minutes later—was too afraid of Lofton to confront him about the candy. (See *Beck*, *supra*, 44 Cal.App.4th at p. 1204 ["an inference cannot stand if it is unreasonable when viewed in light of the whole record"].) An unreasonable inference is not substantial evidence sufficient to support a criminal conviction.

## D.

For these reasons, I would conclude the evidence was insufficient to establish the theft of the candy was *accomplished* by means of force or fear. I would reverse Lofton's second-degree robbery conviction and direct the trial court to modify the judgment to reflect a conviction for misdemeanor petty theft in violation of Penal Code section 484. (§§ 1181, subd. (6), 1260.)

DO, J.